J-S26019-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF: A.J.M.S., A MINOR | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: M.S., FATHER | : : : : : : | |
| | : | No. 512 MDA 2021 |

Appeal from the Decree Entered March 23, 2021
In the Court of Common Pleas of York County
Orphans' Court at 2021-0008A

BEFORE:  STABILE, J., MURRAY, J., and MUSMANNO, J.

MEMORANDUM BY MURRAY, J.:                    **FILED OCTOBER 06, 2021**

M.S. (Father) appeals from the decree involuntarily terminating his parental rights to his daughter, A.J.M.S. (Child), born February of 2019.  Upon careful review, we affirm.

On January 15, 2021, York County Children, Youth & Families (CYF) filed an involuntary termination petition as to Father and M.R.M.S. (Mother), pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b).[1]  The orphans' court convened a hearing on March 23, 2021, during which the Guardian *ad litem* (GAL), T.L. Kearney, IV, Esquire, represented Child's legal and best interests.

---

[1] On February 16, 2021, Mother executed a consent to Child's adoption.  CYF filed a petition to confirm Mother's consent on March 2, 2021.  The orphans' court granted the petition and terminated Mother's parental rights by decree entered March 23, 2021.  Mother did not appeal.

The hearing occurred by Zoom due to the Covid-19 pandemic. CYF presented the testimony of caseworker Jessica Jones, who stated that Child has special medical needs, including eczema and an allergy to a variety of nuts. N.T., 3/23/21, at 57. Ms. Jones testified that Child is thriving in her pre-adoptive kinship placement with A.B., who meets all of Child's needs. *Id.* at 37.

In addition, CYF introduced, and the court admitted into evidence as Exhibit 1, multiple family service plans (FSP) provided to Father dated May 28, 2019, October 23, 2019, March 20, 2020, May 27, 2020, and November 30, 2020.[2] N.T., 3/23/21, at 4-5, 30; Motion, 3/17/21, at ¶ 16. The court also granted CYF's request to incorporate Child's dependency record. *Id.* at 6. Finally, the court granted CYF's motion, filed on March 17, 2021, requesting judicial notice of the facts and procedural history of the case as set forth in the motion, with the exception of paragraphs 27 and 28.[3] *Id.* at 6-10.

---

[2] Ms. Jones testified that the last FSP she had was dated October 28, 2020, not November 30, 2020. N.T., 3/23/21, at 30.

[3] Father's counsel objected to paragraphs 27 and 28. N.T., 3/23/21, at 9. Paragraph 27 stated Child "does not have a bond with Father," and Paragraph 28 read: "Father has failed for a period of twenty-four (24) months to make reasonable efforts to maintain substantial and continuing contact with [C]hild. Father sporadically visits [C]hild via video call and has sent a few letters to [C]hild. Father acknowledges that [C]hild does not have a bond with him." Motion, 3/17/21.

Father testified from State Correctional Institution (SCI) Camp Hill, where he had been incarcerated since July 1, 2018 — prior to Child's birth in February of 2019 — as a result of a charge relating to his strangulation of Mother.[4] N.T., 3/23/21, at 32-33. Father pled guilty to one count of strangulation on March 4, 2019 and was sentenced to one to three years of incarceration. *Id.* at 64. Father testified he would complete his maximum sentence and be released in July of 2021. *Id.* at 64-65. The dependency record reveals that a week prior to the termination hearing, the juvenile court issued a permanency review order dated March 15, 2021, confirming Father's anticipated release in July of 2021. However, the juvenile court found Father "does not have a housing plan upon release" and "acknowledged that he does not have a bond with" Child. Motion, 3/17/21, at ¶ 24(H), (I).

At the time of the termination hearing, Child was two years old. The court first placed Child in CYF's emergency protective custody on April 22, 2019, when Child was approximately two months old, due to Mother's inadequate housing and substance abuse. Motion, 3/17/21, at ¶¶ 7-8; N.T., 3/23/21, at 28. However, the court denied CYF's petition for shelter care and returned Child to Mother. Motion, 3/17/21, at ¶ 9.

---

[4] There is no record evidence regarding what injuries, if any, Mother sustained. *See*, *e.g.*, N.T., 3/23/21, at 33.

On May 10, 2019, the court again placed Child in emergency protective custody. *Id.* at ¶¶ 11-12. Prior to the next hearing, Mother notified CYF "she was giving [C]hild" to A.B., who is a relative. N.T., 3/23/21, at 28-29. Following a hearing on May 22, 2019, the court adjudicated Child dependent and ordered her placement with A.B. Child's permanency goal was reunification.

On August 28, 2019, during a status review hearing, Father contested paternity. Motion, 3/17/21, at ¶ 17. Genetic testing was performed, and in a permanency review order dated September 23, 2019, the court found Father was Child's biological father. *Id.* at ¶ 18(F).

Thereafter, CYF filed a motion for aggravated circumstances as to Father, based on Father's parental rights to another child being involuntarily terminated in 2012; CYF requested that reunification services not be provided. By order dated March 4, 2020, the court found aggravated circumstances, but delayed a decision on reunification services pending further information regarding Father's parole date. The court directed CYF to arrange weekly video visits between Father and Child. However, by permanency review order dated May 6, 2020, while Father remained incarcerated, the court directed that no reunification services be provided. N.T., 3/23/21, at 44. The permanency review order dated October 14, 2020 reflects Father and Child participated in a video visit on October 5, 2020, and an additional video visit was scheduled for November of 2020. At the time of the termination hearing

on March 23, 2021, Father had participated in six video visits with Child, coordinated by A.B. N.T., 3/23/21, at 45. On January 11, 2021, the court changed Child's permanency goal to adoption.

At the termination hearing, the GAL advocated for termination because, in part, "I . . . believe that the video interactions that [Child] had with [F]ather, being six, don't sufficiently create a fatherly bond in her mind. In fact, I don't necessarily believe she actually knows [F]ather is, in fact, her father biologically. . . ." N.T., 3/23/21, at 107.

At the conclusion of the hearing, the orphans' court verbalized its factual findings and concluded that Father's termination was warranted under Section 2511(a)(1) and (2); the court further concluded termination would serve Child's needs and welfare pursuant to Section 2511(b). N.T., 3/23/21, at 91-106. The court memorialized its decision by decree entered on March 23, 2021. Father timely filed a notice of appeal and concise statement of errors complained of an appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). The court filed a Rule 1925(a) opinion on May 19, 2021.

Father presents the following question for review:

I. Whether the [orphans'] [c]ourt committed an abuse of discretion and/or error of law by terminating Father's parental rights despite his forthcoming release from incarceration and good faith efforts to maintain a parent-child relationship while incarcerated?

Father's Brief at 4.

We review the orphans' court's termination decision for an abuse of discretion. The Pennsylvania Supreme Court has explained that this standard,

> requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

In addition, we recognize that termination involves a bifurcated analysis:

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted); *see also In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*) (stating that we need only agree with the court as to any one subsection of Section 2511(a), as well as Section 2511(b), in order to affirm).

Upon review, we conclude the orphans' court did not abuse its discretion in terminating Father's parental rights under Section 2511(a)(2) and (b). These statutory provisions provide:

**(a) General Rule**.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

. . .

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

. . .

**(b) Other considerations.—**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(2), (b).

With respect to Section 2511(a)(2), the moving party must produce clear and convincing evidence of the following elements to terminate parental rights: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence necessary for his physical or

mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied. ***In re Adoption of M.E.P.***, 825 A.2d 1266, 1272 (Pa. Super. 2003). It is well-settled that the "grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." ***In re Adoption of C.D.R.***, 111 A.3d 1212, 1216 (Pa. Super. 2015) (citation omitted).

With regard to a parent's incarceration, our Supreme Court addressed the significance of incarceration in termination decisions under Section 2511(a)(2) in ***In re Adoption of S.P.***, 47 A.3d 817 (Pa. 2012). The Court held:

> [I]ncarceration is a factor, and indeed can be a determinative factor, in a court's conclusion that grounds for termination exist under § 2511(a)(2), where the repeated and continued incapacity of a parent due to incarceration has caused the child to be without essential parental care, control or subsistence and that the causes of the incapacity cannot or will not be remedied.

***Id.*** at 828.

With respect to Section 2511(b), this Court has explained "[i]ntangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." ***In re C.M.S.***, 884 A.2d 1284, 1287 (Pa. Super. 2005) (citation omitted). The orphans' court "must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond." ***Id.*** (citation omitted). However, "[i]n cases where there is no evidence of any bond between the

parent and child, it is reasonable to infer that no bond exists.  The extent of any bond analysis, therefore, necessarily depends on the circumstances of the particular case." ***In re K.Z.S.***, 946 A.2d 753, 762-763 (Pa. Super. 2008) (citation omitted).  Further, "[c]ommon sense dictates that courts considering termination must also consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents." ***In re T.S.M.***, 71 A.3d at 268.  In weighing the bond considerations pursuant to Section 2511(b), "courts must keep the ticking clock of childhood ever in mind." ***Id***. at 269.  "Children are young for a scant number of years, and we have an obligation to see to their healthy development quickly.  When courts fail . . . the result, all too often, is catastrophically maladjusted children." ***Id***.

Instantly, Father argues CYF failed to prove the third element of Section 2511(a)(2), *i.e.*, that the "causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied."  Father emphasizes his release from prison upon reaching his maximum sentence in July of 2021.  Father references his hearing testimony in which he indicated, prospectively, that he would temporarily reside with his aunt and apply for a job with a waste removal business, as well as with a temporary agency where he was previously employed.  Father's Brief at 25 (citing N.T., 3/23/21, at 81-82).  Further, Father cites his willingness to comply with requirements for reunification with Child after his release from prison. ***Id.*** (citing N.T., 3/23/21, at 83).

Pertinent to Father's argument, the orphans' court explained:

> Though [Father]'s release from incarceration may be "forthcoming" this year, [Father] did not provide any credible evidence [that] his incapacity, neglect, and refusal to parent would be remedied. . . . [Father] also failed to show any clear plans for securing a job or independent housing or otherwise establishing an ability to care for [C]hild. [N.T., 3/23/21,] at 81-83. [Father] indicated he may be able to stay with a family member for a few weeks upon release, but he has no plans beyond that point. [N.T., 3/23/21,] at 81:2-14. [Father] did not present evidence as to how or when he would complete a threat of harm evaluation or psychological evaluation, or otherwise show he no longer poses a threat of harm to [C]hild, before being allowed to exercise any form of custody. [N.T., 3/23/21,] at 49:3-50:11. These evaluations are not scheduled and the results are unknown. Even if [Father] completes the necessary evaluations, [Father] may still pose a threat of harm or be unable to provide care for [C]hild. [N.T., 3/23/21,] at 96:7-22.

Orphans' Court Opinion, 5/19/21, at 6-7.

The court's findings are supported by Father testifying, "I'm going to stay with my aunt for like two weeks, maybe a month." N.T., 3/23/21, at 81. Father indicated he would reside with his aunt until he finds his "own place." *Id.* With respect to employment, Father testified:

Q. And what do you intend to do with respect to work?

. . .

Q. Where is it you expect to be hired?

A. [At the waste removal business].

Q. Do you have a contact there? Do you know whether they are hiring right now?

A. Yes. I know they're hiring. I have a contact there too.

Q. On top of that, you have worked for a temp agency, [T.]. Is that correct?

- 10 -

A. Yeah, since I was like 18, on and off.

Q. And you have worked with them right up until your time of the arrest in the present matter, correct?

A. Pretty much.

Q. What sort of jobs did you perform while you were with [T.]?

A. It was a big variety. I was a host at a hotel, waiter at a hotel, preparing meals, . . . worked in a mall, worked at the kitty litter factory, . . . . [I] [h]ad a nice little variety of jobs, just like factory work.

. . .

Q. And you mentioned you are looking at applying to [the waste removal business]. Is it also your plan to return to [T.] and potentially get work through them?

A. Yes, that's immediate.

*Id.* at 81-82.

The court's findings are also supported by Ms. Jones' testimony that to facilitate reunification, Father would have to obtain stable housing; obtain employment with suitable income; complete a psychological evaluation and follow all recommendations; obtain an evaluation pursuant to 23 Pa.C.S.A. § 5329 (consideration of criminal conviction)[5]; and participate in supervised

_____

[5] Section 5329 states in relevant part:

**(a) Offenses.—** Where a party seeks any form of custody, the court shall consider whether that party or member of that party's household has been convicted of or has pleaded guilty or no contest to any of the offenses in this section or an offense in another jurisdiction substantially equivalent to any of the offenses

*(Footnote Continued Next Page)*

- 11 -

visitation with Child. N.T., 3/23/21, at 49-51. Accordingly, Ms. Jones testified CYF would not seek reunification upon Father's release from prison. ***Id.*** at 52. She confirmed Child will be in placement for 26 months at the time of a July 2021 release, and had never met Father in person. ***Id.*** at 33, 52.

In terminating Father's parental rights pursuant to Section 2511(a)(2), the orphans' court relied on the analogous case of ***In re S.P.***, 47 A.3d 817 (Pa. 2012), in which the Supreme Court reinstated the termination order as to the incarcerated father pursuant to Section 2511(a)(2) and (b). The father in ***S.P.*** was incarcerated prior to his child's birth and never provided essential parental care to child. In addition, the father in ***S.P.*** needed to obtain housing, employment, and parenting skills to be reunified with the child after his release from prison. The ***S.P.*** Court concluded the court did not abuse its discretion in determining that the conditions and causes of the father's incapacity could not or would not be remedied even if the father was paroled.

---

in this section. The court shall consider such conduct and determine that the party does not pose a threat of harm to the child before making any order of custody to that party when considering the following offenses:

. . .

18 Pa.C.S. § 2718 (relating to strangulation).

. . .

23 Pa.C.S.A. § 5329, amended June 30, 2021, eff. August 29, 2021.

Here, the orphans' court likewise concluded that CYF presented clear and convincing evidence Father "remains incapacitated **beyond** his period of incarceration." Orphans' Court Opinion, 5/19/21, at 7 (emphasis in original). The court reasoned:

> Similar to *In re S.P.*, [C]hild does not have a relationship with [Father], and [Father] is unable to provide basic support for her special needs[, *i.e.*, eczema and nut allergy]. Upon his release, he will not have stable housing nor the parenting skills necessary for [C]hild. Therefore, grounds for termination are clearly established. Further, the weight of the evidence favors having [C]hild become free for adoption, where her needs are met, rather than waiting for [Father] to cure his incapacity, neglect, and refusal to parent at some undetermined point in the future. [C]hild cannot wait for [Father] to be prepared to take on parental responsibilities. . . .

*Id.* at 7-8.

We discern no abuse of discretion. We are mindful of our standard of review, set forth above, reiterated in *S.P.*, and most recently expressed in *In re S.K.L.R.*, ____ A.3d ____, 2021 Pa. LEXIS 3388 (Pa. 2021), which instructs that we not substitute our judgment for that of the orphans' court. We have examined the record and determined it supports the orphans' court's conclusion that Father's repeated and continued incapacity has caused Child to be without essential parental care, and Father's incapacity will exist upon his release from prison. Thus, we discern error by the orphans' court in concluding Father's incapacity cannot or will not be remedied.

With respect to Section 2511(b), Father concedes he did not raise this issue in his Rule 1925(b) concise statement or his brief. ***See*** Father's Brief at

- 13 -

17 ("Although [Father] has raised a single issue on appeal, that issue relates to the elements of subsection (a)(1) as well as subsection (a)(2). And as to subsection (b), [Father] respectfully submits that the evidence presented regarding his conduct did not satisfy the grounds for termination under subsection (a). [Father] therefore contends that it is not necessary to address subsection (b)."). As such, Father has waived any issue regarding Section 2511(b). *See In re M.Z.T.M.W.*, 163 A.3d 462, 466 (Pa. Super. 2017) ("it is well-settled that issues not included in an appellant's statement of questions involved and concise statement of errors complained of on appeal are waived") (citing *Krebs v. United Refining Company of Pennsylvania*, 893 A.2d 776, 797 (Pa. Super. 2006)).

However, even if Father had raised an issue regarding Section 2511(b), the issue would lack merit because there is no evidence of a parent-child bond. CYF questioned Father during the following exchange:

> Q. Do you recall at the March 15th, 2021 [permanency] hearing you acknowledged that you do not have a bond with [Child]?
>
> A. If you all [are] saying that you all recall me saying it, I'm not going to say I didn't. But I'm just saying, for six [video] visits, I can't really see a big bond out of two years [of Child's life].

N.T., 3/23/21, at 86. Further, the court found Child's needs are being met by A.B., Child's pre-adoptive mother, consistent with the testimony of Ms. Jones. N.T., 3/23/21, at 37. Therefore, we would conclude that the court did not abuse its discretion in determining Child's developmental, physical, and

- 14 -

emotional needs and welfare are served by termination of Father's parental rights pursuant to Section 2511(b).

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/6/2021